## WILSON PLUSH MFG. CORPORATION v. KAY & TODD CO.

No. 2108.

District Court, D. Maryland.
April 27, 1933.

Wm. H. Hudgins, of Baltimore, Md., Joshua R. H. Potts and T. Bertram Humphries, both of Philadelphia, Pa., and Eugene V. Clarke and Basel H. Brune, both of Chicago, Ill., for plaintiff.

Edwin F. Samuels, of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

The patent here in suit relates to the weaving of pile fabric, particularly to the weaving of friezette cloth, which is uncut pile loop material. The plaintiff is assignee of the patent. It was applied for by E. A. Wilson on October 14, 1931, and issued March 1, 1932.

As usual in cases of this kind, there are two primary questions, one infringement and the other validity. The burden of proving infringement is upon the plaintiff; the burden of proving invalidity is upon the defendant.

For the reasons hereinafter given, I reach the conclusion that infringement of the Wilson patent has been proved to the satisfaction of the court, and that the defendant has failed to sustain the burden of proving that the patent is invalid. Therefore my conclusion is that the prayers of the bill must be granted.

Taking up first the question of infringement, I am satisfied from the testimony of the witness Wilhelm that infringement is shown to have occurred, and, in the absence of any contradiction of this proof, there is but one conclusion to reach on this point. That witness testified that in March, 1932, he was shown through defendant's plant by a friend, and that he there saw a loom constructed and operated in the same manner as is called for by the process of the Wilson patent. As I say, in the absence of any testimony to the contrary, I must find that infringement has been satisfactorily established.

Turning then to the question of the validity of the patent, it is proper before reviewing the evidence on that point to analyze the objects of the alleged invention and the substance of the claims. The objects of the invention, as stated in the specifications of the patent, are to provide an improved gauge for weaving pile fabric; to provide a gauge which will afford a greater number of loops per inch than will the conventional metallic gauges, and will give a more uniform and pleasing effect than will pile fabric woven with cord gauges; to provide gauges of such caliber as to dislocate or roll multiple pile threads so as to produce a mottled pile fabric. The claims sued on are three in number, the first one relating to a combination of elements which bring about a mechanical operation, and the remaining two relating to the described process of weaving. These claims read as follows:

"1. The combination with a loom embodying a reed and shedding mechanisms for weaving a backing fabric from warp and weft threads, of resilient wires anchored at the back of the loom and extending through the reed and the shedding mechanism parallel with the warp threads, and a heddle for friezette loop threads, adapted to move said loop threads in vertical planes parallel with said wires, said wires substantially filling transversely the splits in the reed whereby said loop threads in passing said wires have imparted thereto a local random twist.

"2. The process of weaving an uncut warp loop friezette fabric, consisting in employing a pile thread of several differently colored strands; passing said pile thread through splits of a reed as a unit and through a shedding mechanism, obstructing some of said splits of the reed, shedding the threads and obstructions relative to each other so that the threads are twisted locally and at random in passing said obstructions and employing weft threads to maintain such random condition.

"3. The process of weaving an uncut warp loop friezette fabric, consisting in employing a pile thread of several differently colored strands, passing said pile thread through splits of a reed as a unit and through a shedding mechanism, maintaining parallel anchored wires extending through some of said splits of the reed, shedding the pile threads and wires relative to each other so that the threads are twisted locally and at random, in passing said wires and employing weft threads to maintain such random condition."

I find no material difference except one of phraseology between claims 2 and 3. The primary objects of the invention may be said to be more succinctly summarized in the following statement in the specifications: "The invention produces a resulting fabric which can not be produced by the conventional flat gauges and one which can not be produced by the string or cord gauges in a uniform manner, and without the constant renewal of the gauge portions thereof."

If I understand the primary contention of the defendant with respect to the invalidity of the patent, it is that the only real statement of invention in the patent as issued is that as set forth in the specifications, page 2, line 45, to the effect that the gauge wire is of much greater caliber than the caliber of the conventional gauge, and defendant asserts that the size of the wire, or the closeness with which it fits the reed splits, or whether it fits them completely or not, is not a matter of moment, but merely an incidental feature, because it is one merely of degree, especially since, as defendant asserts, the use of the round wire as gauges is old in the art. With this contention I am not able to agree; at least I am not willing to carry it to the extent that defendant desires.

It is true that the assumption of the validity of the patent which arises from its issuance by the Patent Office is only prima fa-

cie, and, therefore, may be overcome by satisfactory proof in litigation of this kind. But I feel that it has not been overcome; that the burden resting upon the defendant to prove invalidity has not been satisfactorily sustained. I say that for the following reasons, and, for the sake of greater clarity we may divide this question of validity into two main branches: First, prior use; and, second, utility.

I understand that defendant does not rely primarily upon any of the patents that were cited before the Patent Office, or which appear in the pleadings in this case. It is true some reliance is placed upon the German patent to Wilhelm Foster which issued October 11, 1906. It is also true, apparently, from such witnesses as have testified in regard to what the single claim of that patent means, that there is some disagreement as to the extent of the use of wires under that patent and of the size of the wire. I am prepared to admit that there may be a certain indefiniteness still surrounding that patent and its exact relationship to the one in suit, but, as previously explained, the burden of proving invalidity is upon the defendant and the defendant has presented no one to the court as its own witness to explain the full details of this German device, but has relied primarily, and I think it may correctly be said, has relied almost as an afterthought, upon what one of plaintiff's own witnesses had to say in regard to the interpretation of this German patent. All in all, I do not think that the testimony with respect to this foreign patent is sufficient to overcome the presumption which arises from the fact that the technical experts of the Patent Office had this patent before it and yet saw fit to reject it as controlling. So much then for the prior use patents.

As to prior public use, I feel that the testimony of the two Messrs. Wilson and of Mr. Edwards is to be given greater credence than the testimony of the witnesses produced by the defendant. We may summarize the defendant's testimony briefly as follows on this point: Mr. Drobile testified that as early as 1925 his firm had used these round wires in substantially the same sort of process, but I am not satisfied from his testimony that these wire gauges did fill the reed splits, as called for by the claims of the patent in suit. And certainly any layman examining the samples which were introduced through this witness, must arrive at the conclusion that the product of the alleged anticipating process was quite different from the product claimed and shown to be the result of the Wilson process. Mr.

Haigh testified that the gauges of the type in suit had been used as early as 1930, but they were not shedded and did not fill the reed splits. As to the other witnesses, I think it sufficient to say that, as to part of their testimony, the wires were shown to be either stationary or not laid parallel to the warp; or, if prima facie the process described by them appears to be the same, their testimony is not sufficiently convincing as to detail to overcome the testimony of the Messrs. Wilson and Mr. Edwards. In other words, I do not feel that it is entitled to the same amount of credence.

That brings us finally to the question of utility. I am satisfied from the weight of the evidence that there is a new utility, a connected combination and process covered by these three claims. I agree with defendant's contention that the invention does not lie merely in the use of the round wire gauge, because that is admittedly old; nor does it lie alone in the local random twist that plaintiff claims is given to the threads by the use of the wire completely filling the reed splits. I further admit that, were we concerned merely with the question whether the Wilson patent, or prior methods, whether patented or not, produced the better design or better mottling—to use the technical term, a better strea—then the patentee would be upon weaker ground. But I think the correct way to interpret these claims is to view them in the light of a combination of elements going to make up, with respect to the first claim, one machine or combination of mechanical devices, and, with respect to the second and third claims, one combined process for weaving. If that be true, then the answer to whether or not the device is patentable lies in the answer to the rule as stated by the Supreme Court which may be summarized as follows: Merely substituting superior for inferior materials may not be patentable invention, although the substitution may be of materials that are both new and useful in high degree. But, if the substitution involves a new mode of construction, or if it develops new properties and uses in the art, or produces a new mode of operation, or results in a new function, or if it represents the first practical success in the art in which the substitution is made, or if there is superiority in the substitution by reason of greater cheapness and utility, and also in more efficient action or functioning, that may amount to invention.

I had occasion to examine the authorities on this question fully in Berry v. Robertson, reported in (D. C.) 40 F.(2d) page 915, and

in that case will be found an analysis of the Supreme Court cases, the reasoning in which when epitomized may be stated as I have just given it.

It seems to me clear from the weight of the evidence in this case that at least one or more of the results set forth in the rule of the Supreme Court have been produced here. The substitution, granting that we have a substitution of old material, did involve a somewhat new mode of construction, in that, as appears from the weight of the credible testimony, the reed splits have not heretofore been filled to the extent that they are filled under the patent in suit. Granting that it developed no actually new properties or uses in the art, the patent did produce, I think, a new mode of operation and resulted in a new function, and, even if we grant that it does not represent the first practical success in the art, I think it is very evident from the weight of the credible testimony, that there is superiority in the substitution and the combination covered by this patent, by reason of greater utility and more efficient action or function.

It should be borne in mind that production of all of the alternative results is, of course, not a condition precedent to making the combination patentable. Any one of the alternatives, as stated by the Supreme Court, may be sufficient.

I consider it unnecessary to go into further detail with respect to the evidence. I will sign an order in conformity with this opinion, upholding the validity of the patent in suit and declaring the defendant to have infringed it.